**MANDATE**

18-461
*Schwab v. E*TRADE Fin. Corp. et al.*

N.Y.S.D. Case #
16-cv-5891(JGK)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of October, two thousand eighteen.

Present:
  DEBRA ANN LIVINGSTON,
  RAYMOND J. LOHIER, JR.,
    *Circuit Judges*,
  PAUL A. CROTTY,
    *District Judge*.*

_____

CRAIG L. SCHWAB, Individually and on Behalf of
All Others Similarly Situated,

  *Plaintiff-Appellant*,

  v.                                                          18-461

E*TRADE FINANCIAL CORPORATION, E*TRADE
SECURITIES LLC, PAUL T. IDZIK, DAVID HERBERT,
ROGER A. LAWSON, and KARL A. ROESSNER,

  *Defendants-Appellees*.†

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 16 2018

---

* Judge Paul A. Crotty, of the United States District Court for the Southern District of New York, sitting by designation.

† The clerk of the Court is directed to amend the caption of this case as set forth above.

1

**MANDATE ISSUED ON 11/16/2018**

| | |
|---|---|
| For Plaintiff-Appellant: | NICHOLAS I. PORRITT, CHRISTOPHER J. KUPKA, Levi & Korsinsky, LLP, New York, NY. |
| For Defendants-Appellees: | MARC L. GREENWALD, COREY WORCESTER, JULIA M. BESKIN, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; FAITH GAY, Selendy & Gay PLLC, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

In this putative class action, Plaintiff-Appellant Craig L. Schwab ("Schwab") appeals from a January 22, 2018 opinion and order granting Defendants-Appellees' motion to dismiss Schwab's Third Amended Complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The TAC was brought under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

Defendants-Appellees are: (1) E*TRADE Financial, a Delaware corporation with executive offices in New York City; (2) E*TRADE Securities LLC ("E*TRADE"), a wholly-owned subsidiary of E*TRADE Financial; (3) Paul T. Idzik ("Idzik"), who was Chief Executive Officer and a director at E*TRADE Financial from 2013 to 2016; and (4) Karl A. Roessner ("Roessner"), who was the Executive Vice President and General Counsel at E*TRADE from 2009 up until 2016, at which point he became Chief Executive Officer. E*TRADE Financial is a financial services company that provides brokerage and related products and services to retail investors. Its subsidiary, E*TRADE, is a registered broker-dealer and the primary provider of brokerage products and services to E*TRADE Financial's customers. These customers submit

2

orders for the purchase or sale of securities which are then routed for execution to various "venues," such as stock exchanges, market makers, and other alternative trading systems. At E*TRADE, though the types of orders placed by clients vary, by far the most common type—making up over 95% of orders—is the "non-directed order." With this type of order, the client does not specify a venue, so E*TRADE itself chooses where to route the order for execution.

Schwab was a customer of E*TRADE. He alleges that between July 12, 2011 and July 22, 2016 ("the Class Period"), E*TRADE violated the duty of best execution, which requires broker-dealers to "use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions." Financial Industry Regulatory Authority Rule 5310(a)(1). Schwab's allegations of misconduct center on two main points: (1) that E*TRADE entered into agreements with third parties that resulted in E*TRADE's failing to deliver best execution; and (2) that E*TRADE focused on the maximization of revenues rather than on delivering best execution to its clients. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). The Court "may affirm a district court's dismissal of a complaint on any basis supported by the record." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). Complaints alleging securities fraud are subject to special pleading standards under both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Under Rule 9(b), a party "alleging fraud. . . must state with particularity the circumstances constituting fraud," though "[m]alice,

3

intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Pursuant to the PSLRA, a complaint "must specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading, and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citations and internal quotation marks omitted).

A plaintiff alleging a violation of Section 10(b) or Rule 10b–5 must plead: (1) a material misrepresentation (or omission), (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *see* 15 U.S.C. § 78u–4(b); 17 C.F.R. § 240.10b–5. To establish a prima facie case of Section 20(a) liability, a plaintiff "must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Where a plaintiff cannot show a primary violation, that plaintiff also "cannot establish control person liability." *Id.*

As relevant here, the district court dismissed Schwab's Section 10(b) claim because it determined that Schwab had failed adequately to plead reliance.[1] A plaintiff's reliance upon the defendant's deceptive acts is an essential element of a 10b-5 claim because it demonstrates "that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (quoting *Basic Inc. v.*

---

[1] The district court also determined that scienter was not adequately pled. Because both elements are required for a Section 10(b) claim, and failure to plead either one justifies affirmance, we address only reliance.

4

*Levinson*, 485 U.S. 224, 243 (1988)). Plaintiffs can show reliance in three ways. First, they can show "traditional reliance"—that they were "aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Id.* Such a showing clearly demonstrates that the plaintiff relied upon the deceptive conduct. *Id.* Second, plaintiffs can invoke the rebuttable *Basic* presumption of reliance if they traded in the securities of a company that made material misrepresentations to the public and whose securities are traded on an efficient market. *See id.* at 810–11; *Basic*, 485 U.S. at 250. Third, plaintiffs can invoke the *Affiliated Ute* presumption of reliance. This presumption is available "if there is an omission of material fact by one with a duty to disclose." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008) (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54 (1972)).

Schwab relies exclusively on *Affiliated Ute* to argue that the TAC adequately pleads reliance. We are not persuaded. The *Affiliated Ute* presumption of reliance under this Court's precedent is appropriate in cases involving *primarily* a failure to disclose, where a defendant both (1) had a duty to disclose and (2) omitted a material fact. *See Stoneridge Inv. Partners*, 552 U.S. at 159; *Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017). We agree with the district court that Schwab has failed to allege such circumstances.

Both in the TAC and in his briefing before this Court, Schwab acknowledges that E*TRADE made many statements during the Class Period affirming its commitment to executing orders in compliance with the duty of best execution. Indeed, as alleged in the TAC, E*TRADE affirmed that an agreement with a third party for order flow was made "subject to best execution standards"; repeated that same point in two of its 10-Ks; specifically noted in two quarterly earnings calls that E*TRADE "ensure[d] [its] customers receive the best execution quality"; and detailed the steps E*TRADE takes to comply with the duty of best execution—including what

5

factors it considers when deciding where to route client orders—in its Customer Agreements, entered into with every new E*TRADE customer. Schwab argues that this case nevertheless involves primarily E*TRADE's alleged "omission of information about its abusive order routing practices." Reply Brief 9. But such an argument is contrary to this Court's decision in *Waggoner*.

In *Waggoner*, the defendant operated an alternative trading system. *Waggoner*, 875 F.3d at 86. The plaintiffs alleged that the defendant had made "numerous statements asserting that [this trading system] was safe" from "aggressive high frequency trading activity" or "predatory traders[]," *id.* at 87–88, but argued that they were entitled to the *Affiliated Ute* presumption because the defendant had omitted the truth—that investors were not in fact adequately protected, *id.* at 95–96. The *Waggoner* Court concluded that these purported "omissions" were "simply the inverse of the [p]laintiffs' misrepresentation allegations," because the only thing they omitted was the "truth that the statement misrepresents." *Id.* at 96. Thus, the plaintiffs' case was one primarily about misrepresentations, not omissions, and the *Affiliated Ute* presumption did not apply. *Id.*

So too here. Just as the *Waggoner* defendant stated that its alternative trading system was protected from abusive trading practices, E*TRADE repeatedly and specifically affirmed that it complied with the duty of best execution. And just as the plaintiffs in *Waggoner* argued that the defendant's statements were misleading because they failed to disclose that the system was not actually protected, Schwab argues that E*TRADE's statements were misleading because they failed to disclose that it did not actually comply with the duty. Schwab's omissions claim, like the *Waggoner* plaintiffs', is "simply the inverse" of a misrepresentation claim; the "only omission is the truth that the statement misrepresents." *Id.* at 96.

Moreover, *Waggoner* determined that *Affiliated Ute* applies only when the original rationale for *Affiliated Ute* is present: when there are "no positive statements," and "reliance as a

6

practical matter is impossible to prove." *Id.* at 95 (quoting *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981)). Schwab's TAC alleges that E*TRADE made many affirmative misstatements directly relating to his claims of fraud. As a "practical matter," then in this case "reliance [is not] impossible to prove," *id.* at 95, and the rationale for the *Affiliated Ute* presumption does not apply. Schwab therefore failed adequately to plead reliance and his Section 10(b) claim was properly dismissed. Because Schwab's Section 10(b) claim was properly dismissed, moreover, Schwab's Section 20(a) claim also necessarily fails and was properly dismissed. *See ATSI Commc'ns*, 493 F.3d at 108.

\* \* \*

We have considered Schwab's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

7